FILED

2022 Jun-24  AM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

|  |  |
|---|---|
| CAMIKA SHELBY, as heir of Nigel Shelby and personal representative of the ESTATE OF NIGEL SHELBY, | |
| and | |
| PATRICK CRUZ, as heir of Nigel Shelby, | |
| Plaintiffs, | |
| v. | Civil Action No. 5:21-cv-520-CLS |
| HUNTSVILLE CITY BOARD OF EDUCATION | |
| and | |
| JO STAFFORD, in her individual capacity, | |
| Defendants. | |

## PLAINTIFFS' MOTION TO COMPEL ANSWERS TO
## <u>INTERROGATORY NO. 11 AND REQUEST FOR PRODUCTION NO. 3</u>

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs move for an order compelling Defendant Huntsville City Board of Education ("HCBOE") to answer Plaintiffs' Interrogatory No. 11 and Request for Production No. 3, as limited by Plaintiffs in an effort to resolve HCBOE's objections. These discovery requests seek

information and documents relating to Plaintiffs' claims that there is a district-wide custom, policy, or practice of failing to properly address sex- and race-based discrimination in its schools, including a failure to have policies prohibiting student harassment based on sex, a failure to train administrators and employees about student-on-student sex-based harassment, and a failure to document and investigate complaints of sex- and race-based discrimination.

Plaintiffs are the Estate and heirs of Nigel Shelby, an openly gay, Black student who attended Huntsville High School during the 2018-2019 school year. Nigel died by suicide after experiencing relentless, unchecked harassment by his peers based on his sexual orientation and failure to conform to male sex stereotypes. Plaintiffs allege that HCBOE and Huntsville City Schools' administrator Jo Stafford violated Nigel's civil and constitutional rights both by responding with deliberate indifference to the known sex-based harassment Nigel faced and by directly discriminating against Nigel on the basis of his sex and race.

Plaintiffs claim that the sex-based harassment Nigel experienced at Huntsville High was the norm because of district-wide policies that did not prohibit sex discrimination by students, HCBOE's failure to provide adequate training to prevent and address such discrimination, and HCBOE's failure to conduct investigations into reports of sex- and race-based discrimination. Plaintiffs also allege that Defendants subjected Nigel to racist comments when he reported the sex-based harassment he

was experiencing. Given these allegations, documents and information involving HCBOE's receipt of other reports of sex- and race-based discrimination—whether formal or informal—and how HCBOE handled those reports, are highly relevant.

HCBOE appears to concede, at least for discovery purposes, that such documents and information are, in fact, relevant. However, it seeks to unduly narrow the scope of its response, objecting on grounds that the requests are overly broad and burdensome—even after Plaintiffs offered to limit the requests both temporally and substantively. Because HCBOE has not withdrawn its objections or agreed to respond after several meet and confer discussions, Plaintiffs request that this court compel a response to both Interrogatory No. 11 and Request for Production No. 3.

## BACKGROUND

*Plaintiffs' Allegations of Sex- and Race-Based Discrimination*

Nigel, who was Black and openly gay, enrolled as a ninth-grade student at Huntsville High School on October 15, 2018. First Am. Compl. ("FAC") 9, ECF No. 29. Soon afterwards, other students began harassing him incessantly based on his sexual orientation and failure to conform to male stereotypes. For example, students told Nigel that "real" boys should date girls (not other boys). *Id.* at 10. They called him names, including "faggot" and "gay," daily for nearly six months. *Id*. Students also harassed Nigel online, including telling him to kill himself because he was gay.

*Id.* Nigel's grades plummeted as a result of the unchecked sex-based harassment, and he began to experience suicidal ideation. *Id.* at 10-11.

Nigel sought help from Jo Stafford, an assistant principal and HCBOE administrator tasked with overseeing Huntsville High's ninth grade class. *Id*. at 6, 11-12. Instead of supporting and protecting Nigel, Stafford ignored, minimized, dismissed his concerns, failing to conduct investigations into his reports of harassment and directly discriminating against him based on his sex and race. *Id.* at 12-16. Over the course of Nigel's ninth grade year, two classmates (Students A and B) also sought help for Nigel from Stafford, reporting their concerns about the harassment Nigel faced and his suicidality. *Id.* at 12-13. Stafford, however, dismissed these students' concerns and did not take any corrective action to help Nigel. *Id* at 12-16. Instead, she mocked him and blamed Nigel for the abuse. *Id.* For example, in response to concerns Student B raised approximately one week before Nigel's suicide, Stafford told Nigel that being gay was a choice and that he would have to accept the consequences of that choice. *Id* at 15. Stafford, who is white, also told Nigel and Student B to "get up and dance to black people's music" so that they would feel better. *Id.* at 14. On April 18, 2019, Nigel hung himself. *Id.*

*Huntsville City Schools' Relevant Policies and Lack of Training on Sex Discrimination*

HCBOE maintains separate anti-harassment policies for students and personnel. FAC 7-8, ECF No. 29. These policies apply district-wide, not just to

Huntsville High School. *Id.* The anti-harassment policy for personnel prohibits "unlawful harassment…on the basis of a legally protected characteristic or status," including race or sex. *Id.* at 7. The anti-harassment policy for students, on the other hand, does not explicitly bar harassment based on an individual's sex (or sexual orientation). *Id.* at 8. Moreover, HCBOE's training failed to make clear that harassment of gay and gender non-conforming students was prohibited. *Id.* at 16-17. In the four-year period before Nigel's death, HCBOE offered a single, three-hour program that discussed lesbian, gay, bisexual, transgender, and queer ("LGBTQ") students—and HCBOE limited that program to school counselors. *Id.* at 16.

*Huntsville City Schools' History of Race-Based Discrimination*

Huntsville City Schools has been operating under a desegregation order for nearly sixty years. FAC 6, ECF No. 29. In 2015, Huntsville City Schools and the U.S. Department of Justice agreed to amend the desegregation order to address outstanding issues throughout HCBOE schools. *Id.* This includes a longstanding problem with racial disparity in student discipline: Black students in HCBOE schools continue to be disciplined at much higher rates than white students, with 52 percent of HCBOE's Black students receiving a disciplinary referral in 2019, compared to only 21 percent of white students. *Id.* at 7. Nigel himself received a ten-day suspension in March 2019 while he was in the midst of experiencing serious mental health issues. *Id.* at 23.

*Plaintiffs' Claims Relevant to Discovery Dispute*

Central to this Motion are Plaintiffs' claims that HCBOE, through Stafford, intentionally discriminated against Nigel on the basis of his race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count III); that HCBOE failed to sufficiently train staff to address sex discrimination, in violation of Nigel's constitutional and statutory rights to be free from sex discrimination in school (Count IV); and that that HCBOE directly discriminated against Nigel based on his sex and/or acted with deliberate indifference to the known sex-based harassment that Nigel faced (Count V). FAC 22-28, ECF No. 29.

*The Discovery Dispute*

In Plaintiffs' First Interrogatories, Plaintiffs requested, and HCBOE responded, as follows:

**Interrogatory No. 11:**

Please provide any information related to any other student who has made any formal and/or informal allegation of sex/gender discrimination, sexual harassment, battery, allegations of Title IX violations, racial discrimination, and/or allegations of Equal Protection Clause violations against any Defendant Huntsville City Board of Education employee, administrator, student, and/or coach, and/or assistant coach, whether or not said allegations were substantiated and/or unsubstantiated, and whether or not said allegations were investigated from 2014-today's date including:

a.    Name of the reporting party, and identify whether said person is an employee, administrator, student, and/or coach, and/or assistant coach.

    b.     Name of the accused/accused and identify whether said person is an employee, administrator, student, and/or coach, and/or assistant coach.

    c.     Date of the incident.

    d.     Factual details regarding the allegations.

    e.     Whether any investigation, administrative investigation, and/or criminal investigation, was conducted and the findings and/or conclusions of said investigation, and name the agency(ies) that conducted said investigation(s).

Ex. A, Plaintiff's [sic] First Interrogatories to Defendant Huntsville City Board of Education ("Plaintiffs' Interrogatories"), 4.

**Response to Interrogatory No. 11:**

Defendant objects to this request because it is overly broad, unduly burdensome, so vague and non-specific as to insufficiently permit a meaningful response. Defendant also object to this interrogatory because seeks information which is not relevant to any issue in this case nor would the production of such information reasonably lead to the discovery of any evidence relevant to the claim or defense of any party in this case. Defendant also objects to this interrogatory on the basis that the burden of collecting all of the requested information outweighs its likely benefit. Defendant also objects to the extent that this interrogatory seeks information pertaining to schools or operations other than the school at which Nigel Shelby was a student on the grounds that such information is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects that the information sought is protected by the Family Educational Rights and Privacy Act ("FERPA").

Ex. B, Defendant Huntsville City Board of Education's Objections and Responses Plaintiff's [sic] First Interrogatories ("Response to Interrogatories"), 7-8.

      In Plaintiffs' First Request for Production, Plaintiffs requested, and HCBOE responded, as follows:

**Request for Production No. 3:**

Please provide any and all documents, reports, audio recordings, videos, photographs and/or any and all evidence related to prior reports/investigations of sexual assault, sexual harassment, battery, allegations of sex/gender discrimination, allegations of discrimination based upon sexuality, allegations of racial discrimination, allegations of Title IX violations, allegations of Equal Protection Clause violations against any Defendant [Huntsville City Board of Education] employee, administrator, student, and/or coach, whether or not said allegations were substantiated and/or unsubstantiated, from 2014-today's date.

Ex. C, Plaintiff's [sic] First Request for Production to Defendant Huntsville City of

Board of Education ("Plaintiffs' Requests for Production"), 1-2.

**Response to Request for Production No. 3:**

The Board objects to this request for production to the extent it seeks documents subject to the attorney-client privilege or the work-product doctrine. The Board objects to this request because it is overly broad, unduly burdensome, so vague and non-specific as to insufficiently permit a meaningful response. The Board also objects to this request because it seeks documents which are not relevant to any issue in this case nor would the production of such documents reasonably lead to the discovery of any evidence relevant to the claim or defense of any party in this case. The Board also objects to this request on the basis that the burden of collecting all of the requested documents outweighs its likely benefit. The Board also objects to the extent that this request seeks documents pertaining to any school or operations other than the school at which Nigel Shelby was a student on the grounds that such documents are neither admissible nor reasonably calculated to lead to the discovery of admissible evidence. The Board also objects to the extent that this request seeks confidential student documents protected by FERPA.

Ex. D, Defendant Huntsville City Board of Education's Objections and Responses

to Plaintiffs' First Request for Production ("Response to Requests for Production"),

4.

The parties conferred in good faith regarding these two discovery requests but were unable to reach an agreement. *See generally* Ex. E, May 2022 Emails re Shelby v. Huntsville City Board of Education ("May 2022 Emails"). Plaintiffs proposed narrowing both requests to alleviate HCBOE's concerns. Specifically, Plaintiffs agreed to limit the temporal scope of the requests to 2015-2021 (instead of 2014 through the present day). *Id.* at 2-3. Plaintiffs also agreed to limit the substantive scope in two respects: they agreed to limit their requests for any oral reports or allegations of discrimination to Huntsville High School (rather than the entire school district), and they agreed to limit their requests for any reports of "battery" to allegations of "sex-based" battery. *Id.* at 2-3.

HCBOE, however, seeks to further limit its response to (1) allegations by middle and high school students of discrimination based only on "LGBTQ status, sexual orientation, and gender identity;" and (2) "[B]lack middle and high school students' allegations of race discrimination by Board employees which have been reported or otherwise brought to the attention of Board administrators." *Id.* at 3.

Though Plaintiffs are willing to limit their requests both temporally and substantively, as described, Plaintiffs do not agree to limit their requests for information relating to reports of "sex discrimination" to reports of discrimination based only on "LGBTQ status, sexual orientation, and gender identity." *Id.* at 1-2. Nor do Plaintiffs agree to limit their requests for information about reports of race

discrimination only to those made by Black "middle and high school students" against "Board employees" which have been "brought to the attention of Board administrators." *Id*. As Plaintiffs' counsel explained to HCBOE, Plaintiffs believe the information they are seeking is highly relevant because "[p]art of showing constitutional violations is demonstrating that the school did not have the proper policies and procedures in place and/or did not enforce them, and/or had a pattern and practice and/or policy of violating students['] constitutional rights in regard to [race and sex]." *Id.* at 1. Further, Plaintiffs explained that they do not believe HCBOE's objections demonstrate a correct application of the relevant legal standards. *Id.*

## LEGAL STANDARD

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)" Fed. R. Civ. P. 33(a)(2). Similarly, "[a] party may serve on any other party a request [for production] within the scope of Rule 26(b)." Fed. R. Civ. P. 34 (a). Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" In the context of discovery, relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be

in the case." *Akridge v. ALFA Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"A party seeking discovery may move for an order compelling an answer…[or] production" if the opposing "party fails to answer an interrogatory submitted under Rule 33; or … fails to produce documents…as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B); *see also Akridge*, 1 F.4th at 1276-77 (explaining that because "mutual knowledge" of the underlying facts is essential to litigation, "either party may compel the other to disgorge whatever facts he has in his possession") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). When a party moves to compel discovery, "[t]he district court has broad discretion … to compel" it. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). "The party resisting production bears the burden of establishing lack of relevance or undue burden in supplying the requested information." *Brownstein Corp. v. Palmer,* No. 2:20-cv-378, 2021 WL 6931812, at *3 (M.D. Ala. Dec. 7, 2021) (quoting *Gober v. City of Leesburg,* 197 F.R.D 519, 521 (M.D. Fla. 2000)); *see also Norton v. Bank of Am., N.A.,* No. 05-61344-Civ-Hurley/Hopkins, 2006 WL 8432180, at *3 (S.D. Fla. Apr. 27, 2006).

## ARGUMENT

**I.    Information About HCBOE's Response to Reports of Sex Discrimination Is Relevant to Plaintiffs' § 1983 Sex Discrimination Claims.**

The information Plaintiffs seek through Interrogatory No. 11 and Request for Production No. 3, as further refined through conferral, is clearly relevant to their equal protection claims against HCBOE for its failure to train (Count IV) and its direct sex discrimination against Nigel (Count V). FAC 23-28, ECF No. 29. To succeed on these claims, Plaintiffs must show that: (1) Nigel's constitutional or statutory rights were violated; (2) HCBOE had a custom or policy that constituted deliberate indifference to that right; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Doe v. Sch. Bd. of Broward Cnty., Fla.,* 604 F.3d 1248, 1265 (11th Cir. 2010).

A school district's refusal to remedy sex discrimination violates a student's equal protection rights. *Murrell. v. Sch. Dist. No. 1, Denver, Colo*., 186 F.3d 1238, 1249-50 & n.7 (10th Cir. 1999). Notably, sex discrimination takes many different forms, ranging from discrimination based on an individual's sexual orientation, gender identity, or failure to conform to sex stereotypes to sexual harassment and assault. *See e.g., Bostock v. Clayton Cnty., Ga.,* 140 S. Ct. 1731, 1754 (2020) (holding discrimination based on sexual orientation and/or gender identity is sex-based); *Price Waterhouse v. Hopkins,* 490 U.S. 228, 250-51 (1989) (holding sex stereotyping is sex discrimination); *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 644-45 (1999) (explaining that sexual harassment, including

12

sexual assault, is a form of sex discrimination). To show a policy or custom of deliberate indifference to a constitutionally or statutorily protected right, "it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).

To show a persistent or widespread practice of deliberate indifference to a protected right, a plaintiff must have access to information about how the defendant responded to other reported violations of the right at issue. That is precisely the type of information Plaintiffs seek through Interrogatory No. 11 and Request for Production No. 3. Specifically, Plaintiffs seek information relating HCBOE middle and high school students' reports of *any* form of sex discrimination from 2015 to 2021, as well as information from any resulting HCBOE investigations in that time frame. Ex. A, Plaintiffs' Interrogatories, 4; Ex. C, Plaintiffs' Requests for Production, 2-3; Ex. E, May 2022 Emails, 1-2. HCBOE, however, seeks to limit Plaintiffs' requests to *formal* reports of discrimination based only on LGBTQ status, sexual orientation, or gender identity (sometimes referred to collectively as "LGBTQ discrimination"), rather than sex discrimination *writ large*. Ex. E, May 2022 Emails, 2-4.

Plaintiffs are entitled to far more information than HCBOE has offered to provide: both formal and informal reports of any type of sex discrimination are relevant to Plaintiffs' claims. Notwithstanding HCBOE's objections, Plaintiffs are

entitled to *informal* reports of discrimination. Ex. E, May 2022 Emails, 1. Plaintiffs

allege that HCBOE had a custom of failing to properly investigate and document

reports of discrimination, including Nigel's reports. FAC 14, 19-22, ECF No. 29.

And, HCBOE has already produced some student-witness statements alleging that

HCBOE took no action in response to their reports of sex discrimination. Ex. E, May

2022 Emails, 1. These students' reports of discrimination may not be memorialized

in HCBOE's "formal" reporting system—if such a system even exists. Because these

students' reports appear to substantiate Plaintiffs' claims that HCBOE had a practice

of responding to reports of sex discrimination with deliberate indifference, they are

certainly relevant. *See also McNeal v. Macon Cnty. Bd. of Educ.,* No. 3:19-cv-

001122, 2021 WL 6883429, at *9-10 (M.D. Ala. May 26, 2021) (requiring defendant

employer to provide both formal and informal employee reports of discrimination in

employment discrimination case).[1]

---

[1] HCBOE also objects to providing other students' complaints because students' information is
protected by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. Ex.
B, Response to Interrogatories, 7; Ex. D, Response to Requests for Production, 4. This objection
is baseless: FERPA does not prevent students' records from being disclosed through the discovery
process, especially where, as here, a protective order is in place. *E.g., Stanislaus v. Emory Univ.,*
No. 1:05-CV-1496, 2006 WL 8432146, at *8 (N.D. Ga. July 28, 2006) (explaining "while the
protections against the unauthorized disclosure of educational records FERPA affords are broad,
[FERPA] does not absolutely prohibit the disclosure of educational records, or otherwise prevent
discovery of relevant records under the Federal Rules of Civil Procedure."); *Cafra v. RLI Ins. Co.*,
No. 8:14-CV-843-T-17, 2015 WL 12844288, at *2 (M.D. Fla. Feb. 5, 2015) (same); *D'Elia v.
India River Cnty. Sch. Bd.*, No. 21-14215, 2022 WL 309379, at *5 (S.D. Fla. Feb. 2, 2022) (same).

Moreover, Plaintiffs are entitled to information on reports of any type of sex discrimination —not just LGBTQ discrimination—that HCBOE received from middle and high school students, as well as HCBOE's response to such reports. Plaintiffs allege that Nigel himself suffered more than one form of sex-based discrimination. FAC 27, ECF No. 29 (explaining that HCBOE discriminated against Nigel both because he was gay and because he did not conform to male sex stereotypes); *see* pp. 9-10, *supra* (explaining that sexual orientation discrimination and sex-stereotyping are two sub-types of sex discrimination). Plaintiffs also allege facts supporting their claim that HCBOE violated the Equal Protection Clause of the Fourteenth Amendment by having a custom, policy, or practice of responding to sex-based discrimination with deliberate indifference. FAC 27-28, ECF No. 29. As explained above, the Equal Protection Clause protects students from all forms of sex-based discrimination, not just discrimination based on sexual orientation. *See* pp. 9-10 *supra*; *see also Williams v. Bd. of Regents of Univ. Sys. of Ga.,* 477 F.3d 1282, 1300 (11th Cir. 2007). To prove that HCBOE has a custom, policy or practice of responding with deliberate indifference to sex discrimination, Plaintiffs are entitled to information about HCBOE's response to other students' reports of any type of sex discrimination. *See e.g., Indian River Cnty. Sch. Bd.,* 2022 WL 309379, at *2, 5 (requiring school district to produce information relating to all allegations of sexual assault, sexual harassment, sexual battery, and gender discrimination from

past six years in case alleging equal protection and Title IX violations).[2] Accordingly, HCBOE's attempt to cabin its response to reports of LGBTQ discrimination is unduly narrow and improper.

Nor would it be unduly burdensome for HCBOE to provide the requested information. If, for some as-of-yet unstated reason, complying with Plaintiffs' requests would be burdensome, HCBOE must explain why. HCBOE cannot rest on conclusory and unsubstantiated assertions that Plaintiffs' outstanding requests are unduly burdensome. *Coker v. Duke & Co., Inc.,* 177 F.R.D. 682, 686 (M.D. Ala. 1998). To date, HCBOE has not explained the purported burden of responding to Plaintiffs' outstanding discovery requests. *See, e.g.,* Ex. B, Response to Interrogatories, 7-8; Ex. D, Response to Requests for Production, 4; Ex. E, May 2022 Emails, 2-4. If HCBOE has a system for documenting reports of discrimination, as it should, Plaintiffs' request that HCBOE provide such reports is not unduly burdensome, especially in light of the fact that Plaintiffs have offered to limit their requests both temporally and substantively, as described above. If HCBOE does not have a system for documenting reports of discrimination, it must disclose that. Making such a disclosure, if necessary, is not at all burdensome.

---

[2] Notably, at the time of the underlying events, HCBOE did not even prohibit sex discrimination by students in its anti-discrimination policy. FAC 8, ECF No. 29.

Even if the Court views Plaintiffs' two outstanding requests to be burdensome in some way, Plaintiffs' need for the information outweighs any burden. Indeed, the information sought goes to the heart of Plaintiffs' claims: it is not possible for Plaintiffs to show that HCBOE had a custom, policy, or practice of responding to reports of discrimination in a deliberately indifferent manner without information about how HCBOE has responded to such complaints. Where, as here, the burden of production does not "outweigh[] the potential value" of the information, "discovery should be permitted." *Commodity Futures Trading Comm'n v. United Invs. Grp.,* No. 05-80002-Civ-Hurley/Hopkins, 2006 WL 8446782, at *2 (S.D. Fla. Feb. 27, 2006). Accordingly, Plaintiffs are entitled to responses to their requests for information regarding middle and high school students' reports of sex discrimination within HCBOE schools, and HCBOE's response to such reports, as well as any oral reports of sex discrimination at Huntsville High (the school Nigel attended), between 2015-2021.

## II. Information About HCBOE's Response to Reports of Race Discrimination Is Relevant to Plaintiffs' Title VI Claim.

The information Plaintiffs seek through Interrogatory No. 11 and Request for Production No. 3, as further refined through conferral, is also clearly relevant to their Title VI claim for HCBOE's direct race-based discrimination against Nigel (Count III). FAC 22-23, ECF No. 29. A school district is liable for race discrimination in violation of Title VI, 42 U.S.C. § 2000d, when it intentionally discriminates against

a student based on their race, and race was a substantial or motivating factor for its actions. *Alexander v. Sandoval,* 532 U.S. 275, 280 (2001); *Methelus v. Sch. Bd. of Collier Cnty., Fla.,* 243 F. Supp. 3d 1266, 1277 (M.D. Fla. 2017). When a high-level administrator, like Defendant Stafford, discriminates against a student, the school district itself is liable for the administrator's discriminatory acts. *See e.g., Liese v. Indian River Cnty. Hosp. Dist.,* 701 F.3d 334, 349-50 (11th Cir. 2012) (holding that a reasonable jury could find a hospital liable under section 504, which is analogous to Title VI, for doctors' discriminatory actions against patients); *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998) (holding that a school district may be liable under Title IX when a school official "with authority to take corrective action" responds with deliberate indifference to allegations of sexual harassment); *Sch. Bd. of Broward Cnty., Fla.,* 604 F.3d at 1255 (explaining a school official's discriminatory acts constitute discrimination by the district if the official is "high enough up the chain-of-command").

When a plaintiff brings a claim for disparate treatment based on being a member of a protected class, other individuals' reports of similar discrimination are relevant. *E.g., Barfoot v. Boeing Co.,* 184 F.R.D. 642, 644 (N.D. Ala. 1999) (requiring employer to produce all employees' discrimination complaints from relevant time period in workplace discrimination case); *Ramsay v. Broward Cnty. Sheriff's Off.,* No. 05-61959-Civ-Marra/Johnson, 2007 WL 9698325, at *2 (S.D. Fla.

Nov. 9, 2007) (same); *Indian River Cnty. Sch. Bd.,* 2022 WL 309379, at *2, 5 (requiring school district to produce information relating to all allegations of sex discrimination from relevant time period in Title IX case). These materials are particularly relevant where they "may reveal the existence of patterns of…discrimination," even in the absence of a pattern and practice claim. *Barfoot,* 184 F.R.D. at 644; *see also Knopfel v. Tech Data Corp.,* 225 F.R.D. 263, 265 (M.D. Fla. 2004) (explaining "general patterns of discrimination by [a defendant] may be relevant in individual disparate treatment cases.").

This is precisely the type of information Plaintiffs seek here. Even absent HCBOE's long-standing history of race discrimination, Plaintiffs are entitled to other students' and employees' reports of such discrimination. *See e.g., Barfoot,* 184 F.R.D. at 644; *Ramsay,* 2007 WL 9698325, at *2; *Knopfel*, 225 F.R.D. at 265. However, in light of HCBOE's long history of race discrimination, the requested information is even more relevant, as it is likely to reveal the existence of "patterns of race…discrimination" that support their allegations. *Barfoot,* 184 F.R.D. at 644; FAC 6-7, ECF No. 29.

For example, whether administrators in the school district subjected other Black students or Black employees to racist comments, as Plaintiffs allege Stafford did to Nigel, would certainly be relevant to the question of whether race was a motivating factor in HCBOE's treatment of Nigel. Moreover, in this case, Nigel

experienced one of the very forms of discrimination at issue in HCBOE's desegregation order: racially discriminatory discipline. FAC 23, ECF No. 29. In March 2019, just weeks before Nigel committed suicide, HCBOE disciplined him with a ten-day suspension even though it knew that he had been experiencing significant sex-based harassment and a resulting mental health decline. *Id.* Other students' or employees' reports of race-based disciplinary practices are relevant to, and could further substantiate, Plaintiffs' allegations that Nigel experienced racially discriminatory discipline.

Because patterns of race discrimination are relevant to Plaintiffs' Title VI claim, they are entitled to the information and materials they seek here: oral reports of race discrimination by district administrators against Black students or employees at Huntsville High School, and written reports of race discrimination by district administrators against Black middle and high school students and employees, from 2015-2021, which were made to any district employee with authority to take remedial action. *See* Ex. E, May 2022 Emails, 1. HCBOE, however, seeks to limit Plaintiffs' requests in several improper ways: it is refusing to provide information relating to employees' allegations of race discrimination, instead restricting the information to allegations of race discrimination by "middle and high school students"; it is refusing to provide information relating to allegations of race discrimination by district administrators, instead restricting the information to

allegations of race discrimination by "Board employees"; and it is refusing to produce information about race discrimination reports brought to the attention of district employees with authority to take corrective action, instead restricting the information to reports "brought to the attention of Board administrators." *Id.* at 2-4. As explained above, employees' allegations of race discrimination by district administrators is certainly relevant to Plaintiffs' Title VI claim of intentional race discrimination. *See* pp. 14-15, *supra.* In addition, HCBOE's attempt to restrict its production to information about race discrimination by "Board employees" brought to the attention of "Board administrators" is impermissibly narrow. Such terms are vague and undefined, seeming to refer only to actual members of the district's school board. But the law is clear that school districts are liable for the conduct of high-level employees who have authority to act on a school district's behalf, regardless of whether they are Board employees or administrators. *E.g., Gebser,* 524 U.S. at 290-91; *Sch. Bd. of Broward Cnty., Fla.,* 604 F.3d at 1255.

As with Plaintiffs' requests for reports of sex discrimination, Plaintiffs' request for reports of race discrimination should not be limited to "formal" reports. S*ee* pp. 10-11, *supra*. In their complaint, Plaintiffs allege that HCBOE had a custom of failing to properly investigate and document reports of discrimination. FAC 14, 19-22, ECF No. 29. And, student witness statements produced by HCBOE reveal that multiple students reported discrimination to HCBOE administrators who then

failed to take appropriate action in response. Ex. E, May 2022 Emails, 1. These informal reports of race discrimination are relevant and may further substantiate Plaintiffs' Title VI claim.

Finally, for the same reasons that Plaintiffs' requests for reports of sex discrimination are not unduly burdensome, Plaintiffs' requests for reports of race discrimination are not unduly burdensome. *See* pp. 12-13, *supra*. And, to the extent Court believes these requests are burdensome, the potential burden on HCBOE is far outweighed by the potential value of the information to Plaintiffs. *Commodity Futures Trading Comm'n,* 2006 WL 8446782, at \*2. Consequently, Plaintiffs are entitled to responses to their requests for information regarding Black students' and employees' reports of race discrimination by district administrators, and HCBOE's response to such reports, as well as any oral reports of race discrimination by district administrators at Huntsville High, from 2015-2021.

## III.   Plaintiffs Are Entitled to an Award of Fees on this Motion.

A court must award attorneys' fees to a party that prevails on a motion to compel unless there is a "substantial justification" for the non-moving party's non-response. *Devaney v. Cont'l Am. Ins. Co.,* 989 F.2d 1154, 1162 (11th Cir. 1993); Fed. R. Civ. P. 37(a)(5)(A). A party's conduct is "'substantially justified' under Rule 37 only if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney,* 989 F.2d at 1163

(quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)). Here, it is plain that the outstanding information requested goes to the heart of Plaintiffs' claims and would not be burdensome to produce. *See supra* Sections I & II. HCBOE's non-response is not "substantially justified" and therefore Plaintiffs are entitled to "reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

## CONCLUSION

Plaintiffs allege that Defendants directly subjected Nigel to sex- and race-based discrimination and failed to address reports of ongoing sex-based harassment Nigel faced from other students and administrators. Plaintiffs should be permitted to discover information related to others' reports of sex- and race-based harassment in HCBOE schools, which is clearly relevant to several of Plaintiffs' claims, as described in this Motion.

Dated: June 24, 2022

Respectfully submitted,

/s/Jasmine Rand
Jasmine Rand*
Rand Law, L.L.C.
2525 Ponce de Leon Blvd.
Suite 300
Miami, Florida 33134
Telephone: (305) 906-6400
Fax: (305) 503-9235
Email: jasminerand@gmail.com

23

M. Lynn Sherrod
Kenneth B. Cole, Jr.
Conchin, Cole, Jordan & Sherrod
2404 Commerce Court
Huntsville, Alabama 35801
Telephone: (256) 705-7777
Fax: (256) 705-7778
Email: lynn@alainjurylaw.com
Email: kenny@alainjurylaw.com

Adele P. Kimmel*
Alexandra Z. Brodsky*
Public Justice, P.C.
1620 L Street NW
Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Fax: (202) 232-7203
Email: akimmel@publicjustice.net
Email: abrodsky@publicjustice.net

* Admitted *pro hac vice*

**Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2022, I electronically filed the foregoing Plaintiffs' Motion to Compel Answers to Interrogatory No. 11 And Request For Production No. 3 with the Clerk of the U.S. District Court using the Court's CM/ECF system, which will send electronic notifications to all parties who have appeared and are registered as CM/ECF participants in this matter.

/s/ Kenneth B. Cole, Jr.
Attorney for Plaintiffs